**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Raymond P. Moore**

Case No. 15-cv-02182-RM

THERESA LADENBURGER,

    Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security Administration

    Defendant.

---

## OPINION AND ORDER
---

On October 1, 2015, plaintiff Theresa Ladenburger ("plaintiff") appealed the Acting Commissioner of Social Security's ("defendant" or "Commissioner") denial of plaintiff's application for Social Security disability benefits. (ECF No. 1.) In her Opening Brief, plaintiff raised the following issues for judicial review: (1) did the Administrative Law Judge ("the ALJ") commit an error of law and was its decision supported by substantial evidence;[1] (2) did the ALJ err in finding that plaintiff could do jobs in the national economy when the only jobs possible did not have significant numbers under 42 C.F.R. § 404.1560(c); (3) did the ALJ commit reversible error in failing to find that plaintiff met Medical Vocational Guidelines (a.k.a "the grid rules") 201.14; and (4) did the ALJ fail to properly evaluate the functional evaluation of Doris Shriver. (ECF No. 19.)

---

[1] The Court does not further mention this issue mainly because plaintiff hardly mentions it any further. The argument with respect to this issue is one paragraph and fails to identify any errors of law or how the ALJ's decision was not supported by substantial evidence. (*See* ECF No. 19 at 7.) As such, this type of undeveloped verbiage is effectively worthless.

With this appeal being fully briefed (ECF Nos. 19, 21, 24), the Court makes the following findings.

## I. The ALJ's Decision

On October 21, 2012, plaintiff filed an application seeking disability insurance benefits, alleging disability beginning as of November 30, 2012. (Administrative Record ("AR") at 92.) At step one of the five-step evaluation process, the ALJ determined that plaintiff had not been engaged in substantial gainful activity since April 17, 2012. (*Id*. at 94.) At step two, the ALJ determined that plaintiff had the following severe impairments: obesity; cervical spine disorder; mild degeneration of the right shoulder acromioclavicular joint; and myofasciitis of the neck and shoulders. (*Id*.) At step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in the governing regulations. (*Id*. at 95.)

Before reaching step four, the ALJ determined that plaintiff had the residual functional capacity to perform light work, except no over chest level work, no climbing of ladders or scaffolds, no extended arm reaching with the dominant upper extremity, and only occasional turning and flexing of the neck. (*Id*. at 95-101.) In so determining, the ALJ, *inter alia*, gave no weight to the opinion of Doris Shriver ("Shriver"), an occupational therapist who performed a worker's compensation evaluation of plaintiff, dated August 5, 2013. (*Id*. at 100.) The ALJ found Shriver's opinion to have no weight because it was a non-acceptable medical source, Shriver evaluated plaintiff on one occasion, Shriver had limited interaction with plaintiff, Shriver arrived at physical limitations that exceeded limits recommended by acceptable medical sources, and Shriver opined on plaintiff's mental functioning when she was not qualified to do so. (*Id*.)

At step four, the ALJ determined that plaintiff was unable to perform any of her past relevant work. (*Id*. at 101.) At step five, the ALJ determined that, after considering plaintiff's age, education, work experience, and residual functional capacity, plaintiff could perform jobs that existed in significant numbers in the national economy. (*Id*. at 102.) Specifically, the ALJ determined that plaintiff could perform the jobs of (1) dealer account investigator, for which there were 35,000 jobs in the national economy and 200 jobs in Colorado, and (2) usher, for which there were 9,000 jobs nationally and approximately 250 in Colorado. (*Id*.) This final determination resulted in the ALJ finding that plaintiff was not disabled for purposes of the Social Security Act. (*Id*. at 102-103.)

## II. Standard of Review

The purpose of judicial review of an ALJ's decision is to determine whether the "decision is free from legal error and supported by substantial evidence." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (quotation marks omitted). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance." *Id*. (quotation marks omitted). In performing this review, a court may not re-weigh the evidence or substitute its judgment for that of the ALJ. *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015).

## III. The Five Step Evaluation Process

A five-step process exists for evaluating whether a person is disabled under the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920(a)(4). First, the claimant must demonstrate that he or she is not currently involved in any substantial, gainful activity. *Id*. §§ 404.1520(a)(4)(i), (b), 416.920(a)(4)(i). Second, the claimant must show a medically severe impairment or combination of impairments that significantly limit his or her physical or mental ability to do basic work

3

activities. *Id*. §§ 404.1520(a)(4)(ii), (c), 416.920(a)(4)(ii). Third, if the impairment matches or is equivalent to an established listing under the governing regulations, the claimant is judged conclusively disabled. *Id*. §§ 404.1520(a)(4)(iii), (d), 416.920(a)(4)(iii).

If the claimant's impairment does not match or is not equivalent to an established listing, the evaluation proceeds to a fourth step, which requires that the claimant show the impairment prevents him or her from performing work he or she has performed in the past. *Id*. §§ 404.1520(a)(4)(iv), (f), 416.920(a)(4)(iv). If the claimant is able to perform his or her previous work, he or she is not disabled. *Id*. §§ 404.1520(f), 416.920(a)(4)(iv). Finally, if the claimant cannot perform his or her past work, the Commissioner must demonstrate that: (1) based upon the claimant's residual functional capacity ("RFC"), age, education, and work experience, the claimant can perform other work; and (2) the work that the claimant can perform is available in significant numbers in the national economy. *Frey v. Bowen*, 816 F.2d 508, 512 (10th Cir. 1987); *see also* 20 C.F.R. §§ 404.1520(a)(4)(v), (g), 416.920(a)(4)(v). If the Commissioner fails to meet this burden, then the claimant is deemed disabled. *Frey*, 816 F.2d at 512.

## IV. Discussion

### A. Jobs in the National Economy (Issue 2)

Plaintiff argues that the ALJ erred in determining that significant numbers of jobs exist in the national economy. (ECF No. 19 at 8-10.) Plaintiff asserts that the total number of jobs (44,000) from the two jobs that the ALJ determined she could perform are a very small number when spread over the entire nation. (*Id*. at 8-9.) Plaintiff also argues that the number of jobs in Colorado (450) is too low, and that the ALJ should have considered factors set forth in *Trimiar v. Sullivan*, 966 F.2d 1326 (10th Cir. 1992), in determining whether there was a significant number of jobs. (*Id*. at 9-10.)

In response, defendant asserts that 44,000 jobs is a significant number nationally, and that this Court should focus upon the national number only. (ECF No. 21 at 8-10.) Defendant further asserts that there was no need for the ALJ to have engaged in a factual analysis similar to that in *Trimiar* because there were a significant number of jobs in the national economy, citing *Raymond v. Astrue*, 621 F.3d 1269 (10th Cir. 2009). (*Id*. at 8.)

The Court agrees with plaintiff in part, and, ultimately, with remanding to the ALJ so that the ALJ may give some factual depth to its determination that a significant number of jobs exist in the national economy.

This issue comes down to whether 44,000 jobs is a significant number of jobs in the national economy. Defendant does not attempt to argue that the jobs in Colorado is significant. Nor, contrary to plaintiff's contention, does defendant need to. The regulations are quite clear that a significant number of jobs must exist locally *or* nationally. *See* 20 C.F.R. § 404.1560(c) ("Any other work (jobs) that you can adjust to must exist in significant numbers in the national economy (*either* in the region where you live *or* in several regions in the country."). As a result, the Court focuses solely upon the national number—44,000 jobs.

The problem for defendant is that defendant has provided the Court with no case law coming close to finding that 44,000 jobs is a significant number of jobs as a matter of law. And it is as a matter of law that defendant effectively wants this Court to rule because defendant does not point to any factual findings made by the ALJ from which the Court could construe that, in this case, 44,000 jobs was a significant number. (*See generally* ECF No. 21 at 8-10.) So, what is the lay of the land in terms of the number of jobs that, as a matter of law, are significant nationally?

Defendant cites to *Raymond*. This is perhaps not the best place to begin for a numbers comparison. In *Raymond*, it was undisputed that 1.34 million jobs in the national economy was significant. *Raymond*, 621 F.3d at 1274. As a result, as defendant asserts, the Tenth Circuit Court of Appeals concluded that it was not necessary to engage in any factual analysis of the significance of the number of jobs because significance was conceded. *See id*. More helpful for defendant is an unpublished Tenth Circuit case, which *Raymond* cites and endorses, where 152,000 jobs in the national economy was deemed significant. *See id*. (citing *Stokes v. Astrue*, 274 F. App'x 675, 684 (10th Cir. 2008). One hundred and fifty two thousand is certainly closer to 44,000 than 1.34 million, but it is still three times as many. One hundred and fifty two thousand, though, is the low bar that the case law sets. Defendant does not cite, and the Court has not found, any other case in which the Tenth Circuit has found a lower number to be significant.

There have certainly been close calls. However, the one example which defendant cites, *Rogers v. Astrue*, 312 F. App'x 138 (10th Cir. 2009), does not go as far as defendant suggests. (*See* ECF No. 21 at 9.) Defendant asserts that, in *Rogers*, the Tenth Circuit "implicitly found" that as few as 11,000 jobs in the national economy was significant. (*Id*.) If by "implicitly found" defendant means the Circuit did not discuss or even mention whether 11,000 jobs was a significant number, then defendant is quite accurate. If defendant means anything more, then defendant is quite wrong because whether such a number is significant is clearly not an aspect of the Circuit's analysis. *See Rogers*, 312 F. App'x at 142.

By defendant's apparent meaning of implicit finding, a case that plaintiff cites could quite easily be construed as implicitly reaching a very different finding to the one in *Rogers*. Plaintiff cites *Chavez v. Barnhart*, 126 F. App'x 434 (10th Cir. 2005). (ECF No. 24 at 3.) In *Chavez*, the Tenth

6

Circuit first concluded that the ALJ had improperly considered the claimant as being able to perform two jobs. *Chavez*, 126 F. App'x at 436. Left with only one job, the question was whether its 49,957 jobs in the national economy and 199 jobs in the region existed sufficiently in the national economy. On that issue, the Circuit remanded because the ALJ had not evaluated whether the one remaining job, standing alone, existed in significant numbers. The Circuit also rejected the Commissioner's request to find the number of jobs significant as a matter of law. *Id*. Notably, the Circuit stated that concluding as a matter of law was particularly inappropriate where the number of jobs in the region was relatively small. *See id*. Notably, absent from the Circuit's statement? Any mention of whether the jobs nationally was relatively small. As noted, though, by defendant's definition of implicit finding, at the very least, the Circuit implicitly found that the number was not too large to render harmless the ALJ's decision.

Ultimately, a case to which defendant cites lights the way forward. That case is *Allen v. Barnhart*, 357 F.3d 1140 (10th Cir. 2004). As defendant asserts (ECF No. 21 at 10), in that case, the Tenth Circuit held that "judicial line-drawing in this context is inappropriate , that the issue of numerical significance entails many fact-specific considerations requiring individualized evaluation, and, most importantly, that the evaluation should ultimately be left to the ALJ's common sense in weighing the statutory language as applied to a particular claimant's factual situation." *Allen*, 357 F.3d at 1144. In *Allen*, because the ALJ did not have occasion to decide whether the number of jobs at issue was significant, the Circuit remanded for consideration of the *Trimiar* factors. *Id*. at 1144-45. The Circuit further stated that affirmance of the ALJ's decision was precluded by *Trimiar* unless it could conclude as a matter of law, which it declined to do, that 100 statewide jobs was so large a number to conclusively establish the requisite numerical significance. *Id*.

The two main differences between *Allen* and this case are: (1) defendant's reliance upon national rather than local jobs; and (2) the fact, here, that the ALJ had an opportunity to decide whether 44,000 jobs nationally was significant. The first difference is of no moment. In order to avoid the factual analysis required by *Trimiar*, defendant must still show that the number of jobs nationally was significant *as a matter of law*. *See Allen*, 357 F.3d at 1144-45. Here, as discussed *supra*, defendant has failed to do that for the simple reason that defendant fails to point this Court to any direction from the Tenth Circuit that 44,000 jobs nationally is significant as a matter of law. One hundred and fifty two thousand is as close as the case law gets, and for this Court that is not close enough. To the extent that there is a "grey area" with respect to the number of national jobs, the Court believes that 44,000 falls squarely within it.

This leaves the second difference. Here, the ALJ undoubtedly had an opportunity to "give explicit consideration to the factors this [Circuit] has recognized should guide the ALJ's commonsense judgment, such as 'the level of [plaintiff's] disability; the reliability of the VE's testimony; the distance [plaintiff] is capable of travelling to engage in the assigned work; the isolated nature of the jobs; and the types and availability of such work.'" *Id*. at 1144 (quoting *Trimiar*, 966 F.2d at 1330) (alterations omitted). The ALJ's decision, though, did not give *explicit* recognition to those factors. As far as the Court can discern, the ALJ's decision likely did not even give implicit recognition to them. The ALJ's sole discussion on this front is the boilerplate statement that based upon plaintiff's age, education, work experience, and RFC, she is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. What precisely the Court is meant to review from that, at least factually, is not readily apparent.

Moreover, as mentioned *supra*, defendant does not explain what factual analysis the ALJ undertook. The furthest defendant goes is by stating that the ALJ reasonably relied on the testimony of the vocational expert ("VE") in concluding that jobs existed in significant numbers in the national economy. (ECF No. 21 at 9.) With respect to numbers, though, the VE's testimony is simply that—a number. In other words, from defendant's perspective, provided that the VE gives a *number* that is sufficient evidence for the ALJ to base its decision upon. That is simply not the case in light of *Trimiar*, and the decisions of the Tenth Circuit interpreting it; specifically those decisions such as *Allen* where, unless a number is deemed significant as a matter of law, a much deeper factual analysis must be carried out. Even *Raymond* supports this interpretation, given that the only reason the Tenth Circuit did not require a deeper factual analysis was because the parties did not dispute that 1.34 million jobs was a significant number. *See Raymond*, 621 F.3d at 1274 & n.2.

As a result, the Court believes that the only course is to remand to the ALJ so that the ALJ can provide the factual detail required by *Trimiar*.[2] The ALJ's boilerplate statement at the conclusion of its decision (*see* AR at 102) is insufficient in that regard. In addition, the Court does not find that performing the *Trimiar* analysis itself is the correct course of action, given the Tenth Circuit's instruction that such an evaluation should be left to the ALJ. *Allen*, 357 F.3d at 1144.

The Court notes an issue not raised by the parties. The pertinent regulation explains that "national economy" in the phrase "significant numbers in the national economy" means jobs in the local region or "in several regions in the country." 20 C.F.R. § 404.1560(c)(1). Here, defendant has disavowed the former type of jobs, i.e. local jobs. However, with respect to the latter, the VE's testimony only provided that there were a total of 44,000 *nationally* (*see* AR at 133); the VE's

---

[2] The Court notes that the factors in *Trimiar* are not meant to be exclusive. *See Trimiar*, 966 F.2d at 1330.

testimony did not break those job numbers down by region to explain whether a significant number of jobs exist in *several regions in the country*, as the regulation requires. Therefore, on remand, the ALJ must also determine whether a significant number of jobs exist in several regions in the country, pursuant to 20 C.F.R. § 404.1560(c)(1).

The Court further notes that, when eliciting testimony from the VE, the ALJ instructed the VE not to provide any jobs in sedentary occupations. (AR at 133.) The Court's remand should not be seen as preventing the ALJ from developing testimony with respect to sedentary jobs, and to the extent plaintiff can perform any such jobs, determining whether those jobs exist in significant numbers in the national economy.

## B. Grid Rule 201.14 (Issue 3)

The Court need spend little time on this issue because plaintiff has failed to develop it sufficiently. In addition, the remand of this case may render the issue moot. Notably, plaintiff, in two brief paragraphs, asserts that the ALJ should have found that plaintiff was disabled pursuant to Grid Rule 201.14. (*See* ECF No. 19 at 10-11.) First, plaintiff, in conclusory fashion, states simply that her history of past work does not provide any transferable skills. (*Id*. at 10.) There is no explanation of what past skills are not transferable, and thus, the Court is left with no reasonable way to assess that argument. Second, plaintiff's argument appears to hinge on the fact that no jobs exist in the "light work" category. (*See id*. at 10-11); *see also* 20 C.F.R. Part 404, Subpart P, Appendix 2 (explaining that grid rule 201.14 only applies to those persons limited to sedentary work). However, as explained *supra*, further factual development is necessary to determine that issue on remand. *See Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003) ("We will not reach the remaining issues raised by appellant because they may be affected by the ALJ's treatment of this case on remand.").

**C.     The Opinion of Doris Shriver** (Issue 4)

Plaintiff argues that Shriver's opinion regarding plaintiff's functional capacity should be re-evaluated.  (ECF No. 19 at 11-12.)  Although plaintiff does not appear to expressly assert that the ALJ failed to consider a range of factors in assessing Shriver's opinion, that appears to be the reason why plaintiff believes that the opinion should be re-evaluated.  (*See id*.)  There are numerous problems with plaintiff's request for re-evaluation.

First, other than wishing for Shriver's opinion to be re-evaluated, plaintiff does not raise any other challenges to the ALJ's RFC determination, including the ALJ's assessment of the medical evidence generally or the ALJ's weighing of any specific piece of medical source evidence.  As such, plaintiff does not argue, at least not in any specific, developed way, that the ALJ's RFC determination is unsupported by substantial evidence.  Thus, even if Shriver's opinion was somehow re-evaluated, it is not abundantly clear how plaintiff envisages that changing the RFC determination.

Second, contrary to plaintiff's apparent though unstated belief, the ALJ evaluated Shriver's opinion in precisely the manner plaintiff now desires.  Notably, the ALJ addressed numerous factors in evaluating the opinion, including the factors that plaintiff believes should have been considered, such as the length of treatment and the frequency of examination (the ALJ found that Shriver met with plaintiff on one occasion), the nature and extent of the treatment relationship (the ALJ found that Shriver met with plaintiff to perform a worker's compensation evaluation, and their interaction was limited), the support of medical evidence for the opinion (the ALJ found that Shriver's opinion contradicted itself), consistency of the opinion with the record as a whole (the ALJ found that no objective medical evidence supported Shriver's opinion, and the opinion arrived at conclusions that exceeded limitations recommended by acceptable medical sources), and the specialization of the

medical source (the ALJ found that Shriver was not qualified to assess plaintiff's mental functioning, and noted that Shriver was an occupational therapist). (*See* ECF No. 19 at 11; AR at 100.) Put simply, the ALJ could not have more fully discussed the factors plaintiff raises if the ALJ had tried. Moreover, at no point does plaintiff explain, or even state, that any of the ALJ's findings with respect to the above factors were incorrect or unsupported; plaintiff simply ignores the ALJ's findings.[3]

As a result, the Court finds that the ALJ did not err, factually or legally, in evaluating Shriver's opinion, and does not remand this issue.

**D.     Remand or an Award of Benefits**

Plaintiff, in the most fleeting way possible, suggests that this Court should reverse the ALJ's decision and award disability benefits, rather than remand this case for further administrative proceedings. (ECF No. 19 at 12.) As defendant accurately observes, plaintiff's request involves no analysis or citation to authority. (*See* ECF No. 21 at 15 n.4.) As such, the Court is disinclined to perform any of its own detailed analysis as to this issue, especially given that plaintiff is represented by counsel. Nonetheless, the Court does note that, as the findings herein indicate, the Court believes that remand is the appropriate course. Most importantly, additional findings are necessary before plaintiff could be entitled to benefits.

Although the Court takes no position on the fact-finding to come or the conclusions to be drawn from those facts, the matter remanded need not result in the ALJ awarding plaintiff benefits, or even finding in plaintiff's favor. As a result, the Court believes that additional fact-finding will be very useful to resolving this case, and thus, REMANDS to the ALJ. *See Salazar v. Barnhart*, 468

---

[3] The Court also notes that, in her reply, plaintiff raises no further argument with respect to Issue 4, and fails to address any of the Commissioner's well-reasoned arguments with respect to this issue. (*See generally* ECF No. 24.)

F.3d 615, 626 (10th Cir. 2006) (explaining that an award of benefits is a matter of discretion, with relevant considerations being the length of time that the matter has been pending, and whether additional fact-finding would serve any useful purpose).

V.      **Conclusion**

For the reasons set forth herein, the Court VACATES the denial of plaintiff's application for social security disability benefits, and REMANDS for further proceedings, pursuant to sentence four of 42 U.S.C. § 405(g).

**SO ORDERED.**

DATED this 13th day of April, 2017.

BY THE COURT:

_____
RAYMOND P. MOORE
United States District Judge